May it please the court, my name is Stephanie Adraktis and I represent the petitioner Ernest Vaden. One of Vaden's key defenses at his trial was based on his testimony and that of others that he was drinking heavily on the night of the charged incident. The court instructed the jury to consider the intoxication evidence when it decided whether Vaden had formed the specific intent to aid and abet the co-defendant Stith's attempted murder and robbery of the two victims. During Vaden's testimony he attempted to explain to the jury that he had been treated for symptoms of serious alcohol abuse the morning that the charged incident occurred at an emergency room Kaiser Hospital. His trial counsel attempted to elicit from him the details concerning that treatment and what had occurred. The majority of the information that was contained in those hospital records that Vaden attempted to testify to was excluded based on the prosecutor's objections as to its nature as hearsay and as irrelevant. So as a practical matter, Vaden was only allowed to testify that he had received treatment at Kaiser on that date, and the details of that treatment were not admitted at trial. A proper method for producing those same facts would have been for counsel to call as a witness the physician who treated Mr. Vaden or to try to admit those records under the business record exception to the hearsay rule, which in California is 1271. So basically you're faulting the method that he used, but why wouldn't that be a tactical decision? He decided to get it in through the testimony of his client rather than through an expert or through trying to get the records admitted. So how does that he attempted to get the information in. The judge didn't let it in. So how is that going to affect the system of counsel because he used a different method than perhaps another lawyer might have used to get the evidence in. Your Honor, I would submit that that was an improper and objectively unreasonable tactic because clearly under the California evidence code, the records would be considered hearsay. The contents of the records would be considered hearsay unless counsel laid a proper foundation that they were business records. And if he had done that, if trial counsel had done that simply by either subpoenaing the custodian of the record or using the declaration method that is allowed to establish that foundation, he could have had that medical record, which is in our excerpts, admitted in its entirety so that the jury would have known essentially all of the important facts about Vaden's treatment. So that was an objectively unreasonable tactic that he used because there is a method that he should have been well aware of to lay that proper foundation and get that evidence in. How would it have made a difference? It would have elucidated the information, but how would it have made a difference if basically the same information was presented to the jury? Your Honor, respectfully, my reading of this record is that the jury got almost none of the information that was contained in the records. They weren't told, for example, that Mr. Vaden had been on a five-day drinking binge, that he had been vomiting blood, that he was withdrawing from acute alcohol intoxication, that the doctor had recommended that he immediately go into treatment. There were a lot of details in those records that were not presented at trial because counsel used a method that was legally indefensible to try to get the information and one should not have the patient testify about what his medical treatment was when those records were readily available and could have been admitted legally through the business record rule. And in addition, the information about the Ativan intravenous treatment that Mr. Vaden got was not admitted and should have been because, according to the physician's desk reference, that drug, when combined with alcohol, it magnifies the effects of alcohol. Mr. Vaden testified that he consumed approximately five beers and a tall glass of Bombay gin after being told by the physicians not to drink. He, of course, did. He's an alcoholic, and that's what happened. But the jury should have known all of this information if they had known that he had also been given intravenous Ativan. It would have dramatically changed counsel's ability to persuade the jury much more effectively that Mr. Vaden was, in fact, intoxicated. That evidence could have negated the specific intent required for aiding and abetting under California law. The California superior court ruled that counsel's decision was a reasonable tactical decision. Why was that an unreasonable application of Strickland? Because the California superior court said the medical records were not probative. And how can we reverse that? Your Honor, I would contend that that decision by the superior court was objectively unreasonable for the same reasons I've been arguing here, that the intoxication issue was one that the jury was instructed on. And that trial, so clearly, evidence of intoxication was relevant. To say that it was not relevant is simply contrary. The medical records were not, not that the effect of intoxication. Understood, Your Honor. But I think it is dramatic in this case that the treatment that Mr. Vaden got for acute alcohol abuse occurred the exact same day as the incident. The superior court's analysis suggests that because the treatment that he got occurred before the charged incident rather than after, that it wasn't relevant. That doesn't make sense. It's his mental state very, very close in time to when this charged incident occurred. Well, it does make sense. But if I hear your argument, you seem to be focusing on the adevant and the fact that he was told that you shouldn't have alcohol because it will, this stuff will increase the effect of it. Your Honor, that's Is that the real gist of this? That's a, that's a, that's not the primary focus. I think because the consumption of the adevant, you know, we don't know exactly what the synergistic effect is, although I've cited cases in my brief that establish that that's something, in fact, the jury can consider. But the primary focus of the argument is, in fact, that he received treatment for acute alcohol abuse described being in the midst of a five-day binge during which he was drinking until he passed out. That's important for the jury to know. Not everyone does that. And if he has a pattern of doing this for which he was experiencing as well extremely acute physical symptoms, vomiting blood is, you know, showing up in an emergency room where they're describing him as having vomited blood and he was having dry heaves in the emergency room, that's very dramatic evidence that this description of himself as being drunk when this occurred was very likely true. I mean, that's something that the jury should have considered in weighing whether or not what he was saying about being intoxicated that day was credible. The two witnesses who testified for the prosecution did describe him as having a beer in his hand and drinking during the incident while it was occurring. They also described having seen him drink all the time before. So that information together with these medical records would have very strongly supported the same defense the defense counsel himself selected and argued to the jury. He was trying to prove this. The defense counsel brought this up in his opening statement. He argued it in his closing argument. He requested and received the instruction on intoxication in California. So there's simply no tactical basis for him to forego presenting the strongest evidence that corroborated his client's account that he was drunk. And this is objective evidence. This is evidence that basically can't be impeached. This is a hospital. It has a duty to keep accurate records of the treatment it provides. So counsel had no reason not to use these. Baden himself, when he testifies, he's impeachable with, you know, his obvious bias or, you know, he's trying to. He testified as to what happened, didn't he? He didn't as to what happened at the hospital. No. Oh, as the entire version of events. Yes, he did. He did. And he did testify to that. And that's one of the issues I believe that is brought up in the magistrate's report is the suggestion that since Baden could relate what happened during that incident in some detail, that he couldn't have been that drunk. And I believe I addressed this in my brief, and also the notion that intoxication must equal unconsciousness is not an accurate characterization of that defense under California law. And I've cited cases on that point. Unless there's other questions. Thank you. May it please the Court, Peggy, we pray for the respondent. Your Honor, intoxication is a time-sensitive type of defense. And what happened in this case was that on the day of the offenses, the defendant went to the hospital at 742 in the morning and indicated that he had been vomiting blood and was having these symptoms. He hadn't had anything to drink that morning. They actually did a blood test at 845 a.m. and his blood alcohol content was zero at that time. He was his stomach was pumped. He reported that he was feeling better. At 10.10 he was given one milligram of Ativan, the lowest possible dose, and then he was discharged at 10.55. The offenses that comprised this crime occurred later that night. He didn't remember exactly what time, but it was after dark. So there was quite a distance in time between when he was at the hospital in the morning and when the offenses occurred. And what the hospital records showed was that he was totally sober at that point in time. So the superior court held that it wasn't an effective assistance not to try to introduce the medical records because they would have showed that he was sober. They wouldn't have supported his intoxication defense because they showed that he went to the hospital and he even had a blood test that confirmed that at 845 a.m. his blood alcohol content was zero. So it's hard to see how it would be unreasonable to conclude that that was not irrelevant and ultimately not helpful to the defense. As to the intoxication defense closer in time to when the events actually occurred, the defendant did testify about exactly what he had to drink. He didn't actually testify that he felt particularly drunk. At one point he couldn't remember exactly the verbatim words, and he said I can't remember those exact words because I was kind of drunk. That's ER 100. But other than that, he seemed to be relating his actions of the night without any difficulty remembering what had happened, which, of course, would be consistent with a person who is a chronic drinker for whom five beers wouldn't really have affected him in the way that it might have for somebody else. So, again, those medical records would not have in fact assisted the defense because they simply showed that that morning he was totally sober after he had been drinking and having these problems in the days past. So by that evening, it's a whole new ballgame, and at that point he does present whatever evidence he thinks is helpful to the intoxication defense at that point. As far as the Ativan goes, it was an extremely low dosage at 10, 10 in the morning. After that, he went home, he slept, a lot of time passed. And more importantly, we have no expert declaration at this point testifying about what kind of effect that might have had. We have a printout from the website of the physician's desk reference saying that if you take Ativan and also have alcohol, it may cause some side effects, but we don't know anything about the certain circumstances here. So you can't conclude that defense counsel was ineffective based on that kind of speculation. And then my final point is that the intoxication defense was presented, and that was part of the defense, but it really wasn't the primary defense. If you read the closing argument and if you read the defendant's testimony, he was trying to say that this all occurred under duress and that he was actually one of the victims. He testified that at one point the two minors and himself were all lined up against the car, and the other guy was holding them at gunpoint, and that he thought he was going to be shot, too, and that it was three against one, not what the boys testified to at all. So this duress defense, that I was only there because the other person who was the one who was armed made me do it, that was the primary defense. So all of these facets of the intoxication defense really could not have had an outcome on the defense under the Strickland standard. And, again, this is a habeas case. It's an extremely deferential standard of review, and I don't think that the Petitioner has shown that the superior court's ruling was an unreasonable application of Strickland. I take it this testimony of what happened, in his version of what happened, that was all brought out in direct by his counsel? Oh, yes. Yes. Thank you. You have about 30 seconds if you wish to use them. I do believe that the intoxication evidence was relevant to what has been talked about as his primary defense as well, because one of the things that was argued that his testimony was unbelievable was based on Mr. Baden's conduct after the incident where he said that he became very, very drunk, went back, he was afraid of what Mr. Stiff was going to do to him and his family, and the point has been brought out in these proceedings and in the trial court that he should have gotten help for the victims if he really wasn't involved in the incident. But if the jury believed that he was a very serious alcoholic and he did, in fact, get very drunk and pass out after the incident, that would explain that behavior. Thank you. Thank you. The case just argued is submitted for decision. That concludes the Court's calendar for this morning, and the Court stands adjourned. All rise.
judges: Hug, Schroeder, Rawlinson